ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK (CBN 149883)
Assistant United States Attorney
Chief, Asset Forfeiture Section
   Federal Courthouse, 14th Floor
   312 North Spring Street
   Los Angeles, California 90012
   Telephone:  (213) 894-6166
   Facsimile:  (213) 894-7177
   E-mail: Steven.Welk@usdoj.gov

Attorneys for Defendant
Eric Holder, in his capacity as
Attorney General of the United States of America

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MONGOLS NATION MOTORCYCLE CLUB, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ERIC HOLDER, Attorney General of the United States, <br><br> Defendant. | Case No.:  CV 13-04374 DDP (VBKx) <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS ACTION; DECLARATION OF AUSA STEVEN R. WELK** <br><br> **DATE:  October 7, 2013** <br> **TIME:  10:00 a.m.** <br> **CTRM: 3 (Spring St. Courthouse)** |

Notice is hereby given that on October 7, 2013 at 10:00 a.m., in Courtroom 3 of the Federal Courthouse located at 312 No. Spring Street in Los Angeles, California, Defendant Eric Holder, sued herein in his capacity as the Attorney General of the United States, will and hereby does move to dismiss the complaint

in this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) on the grounds that this Court lacks subject matter jurisdiction over the claims purported to be stated therein and, further, that Plaintiff has failed to state a claim upon which relief can be granted.  The motion will be based on this notice of motion and motion, the attached memorandum of points and authorities, declaration and exhibits, and upon such other evidence and matters subject to judicial notice as the Court may consider.

DATED:  September 9, 2013        ANDRÉ BIROTTE JR.
                                 United States Attorney
                                 ROBERT E. DUGDALE
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 _____/S/_____
                                 STEVEN R. WELK
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section

                                 Attorneys for Plaintiff
                                 United States of America

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................. ii

I.     INTRODUCTION ................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................2

     A.    The *Cavazos* Indictment ..................................................................2

     B.    Litigation Over the Criminal Forfeiture of the
         Marks in *Cavazos* .........................................................................3

III.   APPLICABLE LEGAL STANDARDS ..................................................6

IV.   ARGUMENT...................................................................................7

     A.    Summary of Argument...................................................................7

     B.    The Court Should Decline to Enjoin an Ongoing
         Criminal Prosecution....................................................................8

     C.    This Action is Barred by Federal Statute ...........................................9

     D.    Criminal Forfeiture Is Governed By a Specific,
         Detailed Statutory Scheme ..............................................................10

     E.    Plaintiff Has Failed to State A Claim for Which
         Relief May Be Granted ..................................................................16

V.    CONCLUSION...............................................................................18

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                     **PAGE**

*Alexander v. United States*,
    509 U.S. 544 (1993)..................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................6, 17

*Balistreri v. Pac. Police Department*,
    901 F.2d 696 (9th Cir.1990) ...................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................6, 16, 17

*Deaver v. Seymour*,
    822 F.2d 66 (D.C. Cir. 1987)...................................................................9

*Kaufman v. I.R.S.*,
    787 F. Supp. 2d 27 (D.D.C. 2011)..........................................................6

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir.2001) ...................................................................6

*Miranda v. Gonzales*,
    173 Fed. Appx. 840 (C.C. Cir. 2006) .....................................................8

*Reporters Committee for Freedom of the Press v. American Telegraph & Telegraph Co.*,
    593 F.2d 1030 (D.C. Cir. 1978).............................................................8

*Smith v. Duncan*,
    297 F.3d 809 (9th Cir. 2002) ..................................................................3

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................7

*Sweeton v. Brown*,
    27 F.3d 1162 (6th Cir. 1994) ........................................................................6

*Traficant v. United States*,
    2002 WL 553724 (N.D. Ohio Feb. 1, 2002) ...............................................9

*United States v. Andrews*,
    530 F.3d 1232 (10th Cir. 2008) .................................................................13

*United States v. BCCI Holdings (Luxembourg) S.A.*
*(Final Order of Forfeiture and Disbursement)*,
    69 F. Supp. 2d 36 (D. D.C. 1999)..............................................................14

*United States v. Bieri*,
    21 F.3d 819 (8th Cir. 1994) .......................................................................11

*United States v. Capoccia*,
    503 F.3d 103 (2d Cir. 2007) ......................................................................11

*United States v. Creighton*,
    52 Fed. Appx. 31 (9th Cir. 2002) ..............................................................11

*United States v. DeFries*,
    129 F.3d 1293 (D.C. Cir. 1997)..................................................................11

*United States v. Evanson*,
    2008 WL 3107332 (D. Utah 2008)..............................................................11

*United States v. Gaskin*,
    2002 WL 459005 (W.D.N.Y. 2002), *aff'd*,
    364 F.3d 438 (2d Cir. 2004) ......................................................................13

*United States v. Hernandez-Escarsega*,
    886 F.2d 1560 (9th Cir. 1989) ...................................................................11

*United States v. Holy Land Foundation, etc.*,
    493 F.3d 469 (5th Cir. 2007) ....................................................................14

iii

*United States v. Kramer*,
    912 F.2d 1257 (11th Cir. 1990) ...................................................................14

*United States v. Lazarenko*,
    476 F.3d 642 (9th Cir. 2007) ...............................................................12, 13

*United States v. Najjar*,
    300 F.3d 466 (4th Cir. 2002) ......................................................................11

*United States v. Nava*,
    404 F.3d 1119 (9th Cir. 2005) .............................................................12, 13

*United States v. Schlesinger*,
    396 F. Supp. 2d 267 (E.D.N.Y. 2005) ......................................................13

*United States v. Shryock*,
    342 F.3d 948 (9th Cir. 2003) ......................................................................11

*United States v. Yeje-Cabrera*,
    430 F.3d 1 (1st Cir. 2005)............................................................................13

*Wood v. McEwen*,
    644 F.2d 797 (9th Cir. 1981) .......................................................................7

*Younger v, Harris*,
    401 U.S. 37 (1971).........................................................................................8


**DOCKETED CASES**

*Rivera v. Carter*,
    Case No. CV 09-2435 DOC ..................................................................15, 16

*United States v. Cavazos*,
    Case No. CR 08-1201 ODW……………………………………..…passim

*United States v. Mongol Nation, an Unincorporated Association*,
    Case No. CR 13-106 ODW…………………………………………………1

iv

# FEDERAL STATUTES AND RULES

18 U.S.C. § 1962 ............................................................................. 2

18 U.S.C. § 1963 ...................................................................... 10, 14

18 U.S.C. § 1963(a) ..................................................................... 2, 9

18 U.S.C. § 1963(d) ....................................................................... 12

18 U.S.C. § 1963(i) .......................................................................... 9

18 U.S.C. § 1963(i)(2) ................................................................... 10

18 U.S.C. § 1963(l) ........................................................................ 12

18 U.S.C. § 1963(l)(2) ..................................................................... 9

21 U.S.C. § 853 ............................................................................. 11

21 U.S.C. § 853(e) ........................................................................ 10

21 U.S.C. § 853(k)(1) ................................................................... 12

28 U.S.C. § 2072(b) ...................................................................... 10

Fed. R. Civ. P. 12(b)(1) ................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................... 6, 7

Fed. R. Civ. P. 12(h)(3) ................................................................... 6

Fed. R. Crim. P. 32.2 ..................................................................... 10

Fed. R. Crim. P. 32.2(b)(1)(A) ...................................................... 11

Fed. R. Crim. P. 32.2(b)(1)(B) ...................................................... 11

v

**MISCELLANEOUS**

Advisory Committee Notes to Federal Rule of Criminal
Procedure 32.2 (2000 Adoption)........................................................................12, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff, calling itself Mongols Nation Motorcycle Club, LLC here, is, by its own admission, the defendant in a currently pending criminal action now pending in this district before the Honorable Otis D. Wright entitled *United States v. Mongol Nation, an Unincorporated Association*, CR 13-106 ODW (the "2013 Indictment") . *See* First Amended Complaint ("FAC") at 3.  Plaintiff alleges at paragraph 7 of the FAC that the government filed the 2013 Indictment case against the "Club."  Throughout the FAC, plaintiff goes on to refer to itself as the "Club," alleging, among other things, that it is the owner of the trademarks that the government is seeking to criminally forfeit in the 2013 Indictment.  *See* FAC at 3, ¶8.

Plaintiff also admits that it has used several different names over the last several years, but has maintained the same identity throughout.  For example, it alleges that it is now known as Mongols Nation Motorcycle Club, LLC ("Mongols, LLC"), but was previously incorporated as Mongol Nation Motorcycle Club, Inc. ("Mongols, Inc.").  FAC at 2, ¶5 and 5, ¶16.  It further alleges that Mongols, Inc was "previously dissolved" (*id.* at 3, ¶5) and then "reformed" or "reincorporated" as Mongols, LLC.[1]  *Id.*  Regardless what plaintiff calls itself (or has called itself), it admits that it is the criminal defendant named in the 2013 Indictment.  Plaintiff is also the same entity that litigated the criminal forfeiture of these same marks in a prior criminal prosecution (*United States v. Cavazos*, CR 08-1201 ODW ("*Cavazos*")), also before Judge Wright.

---

[1] As explained below, plaintiff does not explain in the FAC that there was a lengthy gap between the dissolution of Mongols, Inc. and the purported creation of Mongols, LLC.  Nor does plaintiff acknowledge that it has admitted in judicial filings in this district that Mongols, Inc. was merely another name for Mongol Nation, an unincorporated association.

For the reasons explained below, plaintiff cannot sue the government in a civil equitable action to avoid the consequences of the 2013 Indictment.  In addition to the fact that it has legal remedies available to it in the criminal case – making it ineligible for the equitable relief it seeks here – there is a specific statutory bar preventing plaintiff from seeking legal or equitable relief through the filing of this separate civil action.  The action should be dismissed in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The *Cavazos* Indictment

In October 2008, the government obtained an indictment against more than 80 members of the Mongols outlaw motorcycle gang ("Mongols") following a three-year investigation during which three Special Agents of the Bureau of Alcohol Tobacco and Firearms ("ATF") succeeded in infiltrating the Mongols, becoming members and, in some cases, officers of chapters of the gang. *United States v. Cavazos, et al.*, CR 08-1201 ODW.  The charges included RICO conspiracy and numerous drug offenses, and virtually all of the defendants were convicted pursuant to guilty pleas, including Ruben "Doc" Cavazos, the lead defendant and former national president of the Mongols.  FAC at 3, ¶9.

As part of the *Cavazos* prosecution, the government sought the forfeiture of two collective membership marks used by the Mongols to further the goals and purposes of the criminal enterprise in which the members of the gang engaged. These are the same two marks referenced in the FAC, and the criminal forfeiture of those marks is also being sought in the 2013 Indictment.  In *Cavazos*, United States District Judge Otis D. Wright found that the marks were acquired or maintained in violation of 18 U.S.C. § 1962 and afforded a source of influence over the criminal enterprise alleged in the indictment, establishing the requisite nexus allowing forfeiture of the marks under 18 U.S.C. §§ 1962 and 1963(a).  *Cavazos*, DN 3854

(June 15, 2010 Preliminary Order of Forfeiture), a copy of which is attached to the Declaration of Steven R. Welk ("Welk Decl.") as exhibit 1.[2]

**B.    Litigation Over the Criminal Forfeiture of the Marks in** *Cavazos*

Following the entry of the Preliminary Order, plaintiff, in its Mongols, Inc. iteration, challenged the forfeiture of the marks in the third party ancillary process. *See Cavazos* DN 3946 (Mongols, Inc. Verified Petition to Vacate or Amend Preliminary Order of Forfeiture, a true and correct copy of which is attached to the Welk Decl. as exhibit 2).  In the petition, Mongols, Inc. alleged that it was the "successor in interest" to the "Mongols Nation Motorcycle Club," which was "founded in 1969" and "incorporated [as Mongols, Inc.] in the State of California in 2008." *Id.* at 8.[3]  Mongols, Inc. further alleged that it had "owned the Marks continuously since 1969 or 1970 in its forms as either an *unincorporated association* and/or as a corporation." *Id.* at 14 (emphasis added).[4]

The verified petition of Mongols, Inc. filed in *Cavazos* was signed under penalty of perjury on July 20, 2010 by David Santillan, who was identified as the "President of the Mongol Nation Motorcycle Club." *Id.* at 15  Santillan is the current President of Mongols, LLC (plaintiff here), and was the representative who

---

[2]  The exhibits to the Welk declaration include copies of filings and exhibits that were filed in *Cavazos* during the course of third-party ancillary proceedings between the government and plaintiff (calling itself Mongols, Inc.).  The Court is empowered to take judicial notice of documents filed in court proceedings. *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002).

[3]  Mongols, Inc. was incorporated on December 17, 2008, approximately 2 months after the unsealing of the *Cavazos* indictment.  *See* exhibit 5 to the Welk Decl.

[4]  This admission establishes that the Mongols were an unincorporated association from 1969 until at least 2008.  It was also indisputably an unincorporated association from the time of the dissolution of Mongols, Inc. (which occurred in either July or September 2011) and the organization of Mongols, LLC in April of 2012.  The racketeering conspiracy alleged in the 2013 Indictment began no later than March 16, 2002 and continued to at least May 25, 2012.  *See* exhibit 9 to the Welk Decl. at 20, 24.

appeared for the defendant unincorporated association at the August 2, 2013 arraignment in the pending criminal case against Mongol Nation proceeding before Judge Wright. *See* Minutes of Post-Indictment Arraignment, a true and correct copy of which is attached as exhibit 3 to the Welk Decl. Among the documents submitted by Mongols, Inc. in *Cavazos* in support of its verified petition was a "Trademark Assignment" dated January 21, 2009, by which "Mongol Nation, an unincorporated association," purported to transfer the two marks at issue to Mongols, Inc. *See* exhibit 4 to the Welk Decl. That assignment is signed by Martin Guevara for both the unincorporated association and Mongols, Inc. Guevara admitted in a deposition taken in *Cavazos* that he was the president of both entities. *See* exhibit 10 to the Welk Decl. (referring to the unincorporated association and Mongols, Inc., Guevara testified "They're one and the same").

Ultimately, after extensive litigation in *Cavazos* between the government and Mongols, Inc. over the forfeitability of the Marks, Judge Wright concluded that neither Cavazos nor any other individual member of the Mongols gang ever held an ownership interest in the marks. Rather, Judge Wright found, the marks were owned by the Mongols unincorporated association (Judge Wright properly recognized no distinction between the unincorporated association and Mongols, Inc.), which was not a defendant in *Cavazos*. *See Cavazos* DN 4481 at 7 (June 28, 2011 Final Order Vacating the Preliminary Order of Forfeiture Re Trademarks, a true and correct copy of which is attached as exhibit 6 to the Welk Decl.). Since criminal forfeiture is necessarily *in personam*, only property owned by a defendant could be forfeited. On that basis, Judge Wright "regrettably" concluded that the marks could not be forfeited in the *Cavazos* case. *Id.*[5]

---

[5] The same obviously is not true in the pending criminal case. Plaintiff here (which admits that it is the sole owner of the marks) is the sole defendant named in the 2013 Indictment, and has been arraigned in that case.

As noted above, plaintiff also admits that Mongols, Inc. was dissolved.  The Certificate dissolving that corporation was signed by Santillan (who signed as the "sole director" of Mongols, Inc.) three days after the entry of Judge Wright's June 28, 2011 Final Order.  *See* Certificate of Dissolution, a true and correct copy of which is attached to the Welk Decl. as exhibit 7.  Santillan signed the Certificate of Dissolution under penalty of perjury.  Among the representations made in the Certificate was that "the corporation never acquired any known assets," a statement that, on its face, is materially inconsistent with the Trademark Assignment submitted to the Court in *Cavazos,* the sworn testimony of former president Guevara at his deposition, and the arguments made by Mongols, Inc. in the *Cavazos* ancillary proceedings.  *Id.*  The Certificate of Dissolution was filed with the California Secretary of State on September 19, 2011.  Mongols LLC was not organized until April 17, 2012.  *See* Mongols LLC Articles of Organization, a true and correct copy of which is attached to the Welk Decl. as exhibit 8.  Santillan is listed in the Mongols LLC Articles as the organizer and the initial agent for service of process.  *Id.*

The 2013 Indictment was filed on February 13, 2013.  A true and correct copy of the 2013 Indictment is attached to the Welk Decl. as exhibit 9.  The instant action was filed on June 18, 2013, and the FAC was filed on July 9, 2013.  The FAC seeks declaratory and injunctive relief based on seven purported "counts" but as demonstrated by its own allegations, is nothing but a collateral civil attack on the 2013 Indictment.  Specifically, the "counts" in the FAC allege that (1) the government's attempts to forfeit the marks constitutes a prior restraint on speech in violation of the First Amendment to the United States Constitution; (2) the government's "attempt[] to seize" the marks cannot be pursued against plaintiff; (3) the doctrine of collateral estoppel bars the government's efforts to forfeit the marks; (4) the doctrine of *res judicata* bars the forfeiture of the marks; (5) the government's attempts to forfeit the marks is barred by the statute of limitations;

(6) the government's attempts to forfeit the marks "violates the Fourth Amendment prohibitions on illegal searches and seizures"; and (7) the government's attempts to forfeit the marks "is in violation of Plaintiff's right to due process of law."

### III.   APPLICABLE LEGAL STANDARDS

Under Rule of Civil Procedure 12(b)(1), a pleading is properly dismissed when it is clear that the court before which the matter is pending lacks subject matter jurisdiction. *See* Rule 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Because jurisdiction is a threshold issue separate from the merits, in making that determination, the court may consider materials outside the pleadings. *Kaufman v. I.R.S.*, 787 F. Supp. 2d 27, 32 (D.D.C. 2011). Jurisdiction may not be presumed. *Sweeton v. Brown*, 27 F.3d 1162, 1168 (6th Cir. 1994).

Under Rule 12(b)(6), a pleading may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pac. Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). "Threadbare recitals of the elements of a cause of action" are insufficient; rather, the complaint's factual allegations, while taken as true, must "state[s] a plausible claim for relief [in order to] survive[] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a motion under Rule 12(b)(6), the Court may consider the facts alleged in the complaint, documents attached to or relied upon in the complaint, and matters of which the Court may take judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001). Among other things, the Court "may take judicial notice of matters of public record," including court filings. *Id.*

Although the Court should generally take all allegations of material fact in the Complaint as true for purposes of a Rule 12(b)(6) motion, the "court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. . . . Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The district court has broad discretion to dismiss claims under Rule 12(b)(6) when they have no legal merit. *Wood v. McEwen*, 644 F.2d 797, 800 (9th Cir. 1981).

## IV.   ARGUMENT

### A.   Summary of Argument

Plaintiff's complaint must be dismissed for a variety of reasons, the most obvious being that it is a civil equitable action by which a criminal defendant in a case currently pending before another court in this district is seeking to enjoin the government from prosecuting it in that case.  As demonstrated by the procedural history set out above, plaintiff's attempted shell game concerning its name and true legal identity is simply the latest in a series of attempts by this organization to duck responsibility for its actions and avoid the forfeiture of the marks.

Plaintiff's action is also barred by the clear language of a federal statute preventing a party from commencing a civil action for the purpose of determining the merits of a pending criminal forfeiture proceeding, depriving this court of subject matter jurisdiction to entertain the action.  Finally, plaintiff's claims are nothing more than a host of legal defenses that are available to it in the pending criminal case.  None is a proper basis for a civil equitable claim.  The flaws in the complaint are incapable of being remedied by amendment, so there is no basis for granting leave to amend.

### B.    This Court Should Decline to Enjoin an Ongoing Criminal Prosecution

The remedy sought by plaintiff in this action is a declaration by this court that the federal government may not obtain the forfeiture of the marks sought in the 2013 Indictment.  FAC (DN 7) at 10.  Plaintiff admits that it is the defendant in that criminal prosecution and that it is the owner of the marks at issue.  FAC at 3, 5.  The forfeiture of those marks therefore presents factual and legal issues that will necessarily be determined as part of the criminal case in which (1) plaintiff here is the defendant and (2) the government seeks the criminal forfeiture of the marks.  What plaintiff seeks, then, is to have this court make an advisory determination of issues presented in a pending criminal prosecution before another court in this district, in which the forfeiture of the marks is a potential element of the sentence that might be imposed if plaintiff is found guilty of the charges that have been brought against it.

Federal courts are justifiably reluctant to intervene in ongoing criminal investigations and prosecutions.  *Reporters Comm. for Freedom of the Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1065 (D.C. Cir. 1978).  It is a "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Younger v, Harris*, 401 U.S. 37, 43-44 (1971).  Where, as here, a civil plaintiff seeks to enjoin federal prosecution, it has an adequate remedy at law in the federal criminal proceedings, even where plaintiff claims (as plaintiff does here) that the threatened investigation or prosecution will impact its rights under the First Amendment to the Constitution.  *See, e.g., Miranda v. Gonzales*, 173 Fed. Appx. 840, 841-42 (C.C. Cir. 2006).

The mere fact that plaintiff has characterized its claims as constitutional in nature is inconsequential.  "The proper vehicle for a pre-conviction constitutional

challenge is a motion to dismiss in the criminal proceeding," not the filing of a separate civil equitable proceeding. *Traficant v. United States*, 2002 WL 553724, *3 (N.D. Ohio Feb. 1, 2002) (relying on *Deaver v. Seymour*, 822 F.2d 66, 68 (D.C. Cir. 1987).   There is simply no authority for the proposition that a federal district court has subject matter jurisdiction where a defendant in a pending federal prosecution seeks a determination of potential defenses in the context of a separate civil equitable action.  Plaintiff's first amended complaint should be dismissed on that ground alone.

### C.    This Action is Barred by Federal Statute

Each of plaintiff's purported claims in this case arises from the government's giving of notice in the 2013 Indictment that it will seek the criminal forfeiture of the marks upon the conviction of the Mongols of the substantive charges alleged therein.  Forfeiture of the marks is sought pursuant to 18 U.S.C. § 1963(a).  Pursuant to § 1963(i):

> Except as provided in subsection (l), no party claiming an interest in property subject to forfeiture under this section may -
>
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

Subsection (l) requires that any party "asserting a legal interest" in property alleged to be subject to forfeiture is required to wait until ancillary proceedings following the entry of a preliminary order of forfeiture in the criminal case.  18 U.S.C. § 1963(l)(2).  The language of these provisions is explicit and unambiguous.  The bar on collateral attack is not limited to claims of "ownership" interests -- although that is precisely what is being made here -- it applies to *any* claimed interest in property

alleged to be subject to forfeiture.[6]  As noted, that distinction is irrelevant here because plaintiff seeks a "declaration that [Mongols LLC is] the rightful owner[] of the marks" sought for forfeiture.  FAC at 10.  Given this admission, it is indisputable that this  action falls squarely within the scope of § 1963(i)(2) because it is "an action at law or equity against the United States concerning the validity of [plaintiff's] interest in the property [commenced] subsequent to the filing of an indictment . . . alleging that the property is subject to forfeiture under [§ 1963]." To the extent that plaintiff wants to challenge the criminal forfeitability of the marks, its opportunity to do so will be in the context of the criminal case as part of the sentencing process.  Plaintiff has no more right to challenge the criminal forfeiture in this civil proceeding than it would to file a civil case to challenge any other element of its potential sentence in the event of a conviction in the criminal case.

### D.   Criminal Forfeiture Is Governed By a Specific, Detailed Statutory Scheme

Criminal forfeiture is governed entirely by statute and Rule.  *See* 18 U.S.C. § 1963 and Federal Rule of Criminal Procedure 32.2.[7]  Following a conviction or guilty plea, the Court will determine whether the evidence before it establishes a

---

[6]  The § 1963 bar on collateral attacks is essentially identical to 21 U.S.C. § 853(e) (governing most non-RICO criminal forfeitures).

[7]  Rule 32.2 is the primary authority establishing criminal forfeiture procedure. While 18 U.S.C. § 1963 also includes procedural provisions in subsections (e) - (m), those provisions are essentially identical to those in Rule 32.2.  They are relevant here only to the extent that they provide additional powers, authority or restrictions that are consistent with the Rule.  To the extent the procedural provisions of the statute conflict with Rule 32.2, the rule must trump.  *See* 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no force or effect after such rules have taken effect.").

nexus between the underlying conviction and the property sought for forfeiture.[8] The court's nexus determination may be based upon "evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Rule 32.2 ((b)(1)(B).  The evidence relied upon by the court need not satisfy the Rules of Evidence, and may include hearsay, as the forfeiture determination is part of the sentencing process.  *See United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007); *United States v. Evanson*, 2008 WL 3107332, at *2 (D. Utah 2008); *United States v. Creighton*, 52 Fed. Appx. 31, 35-36 (9th Cir. 2002).

The standard of proof regarding the forfeitability of property in a criminal case, including RICO cases, is preponderance of the evidence.  *See United States v. Najjar*, 300 F.3d 466, 485-86 (4th Cir. 2002) (RICO); *United States v. Shryock*, 342 F.3d 948, 991 (9th Cir. 2003) (following *Najjar*); *United States v. DeFries*, 129 F.3d 1293, 1312 (D.C. Cir. 1997) (RICO); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576-77 (9th Cir. 1989) (interpreting identical language in 21 U.S.C. § 853); and *United States v. Bieri*, 21 F.3d 819 (8th Cir. 1994) (§ 853).

---

[8]     Rule 32.2 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> Forfeiture Determinations.  As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute.  If the government seeks forfeiture of specific property, <u>the court must determine whether the government has established the requisite nexus between the property and the offense.</u>  If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Rule 32.2(b)(1)(A) (emphasis added).

If the nexus requirement is established, the Court is required to promptly enter a preliminary order of forfeiture. *See United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) ("Upon a finding that the property involved is subject to forfeiture, a court must promptly enter a preliminary order of forfeiture without regard to a third party's interests in the property.") (interpreting identical provision in § 853 (k)(1)).  The rights of third parties (*i.e.*, non-defendants) in the property sought to be forfeited are deferred to separate proceedings that follow the conviction and entry of the preliminary order.  *See* § 1963(d) and (l); *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) ("third parties must await the defendant's conviction . . . [and] the court's order of forfeiture before requesting an ancillary hearing").  The Court adjudicates third party interests only after both the conviction *and* entry of the preliminary order of forfeiture.  *Lazarenko*, 476 F.3d at 642.

Critically, the determination of ownership of property alleged to be subject to criminal forfeiture is deferred to the ancillary proceedings which follow the entry of the preliminary order.  *See* Advisory Committee Notes to Federal Rule of Criminal Procedure 32.2 ("Rule 32.2") (2000 Adoption):

> Under [the statutory forfeiture scheme first enacted in 1984, including 18 U.S.C. § 1963(l)], the court orders the forfeiture of the defendant's interest in the property - *whatever that interest may be* -- in the criminal case.  At that point, the court conducts a separate proceeding in which *all potential third party claimants* are given an opportunity to challenge the forfeiture by asserting a superior interest in the property.  This proceeding does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property.

The reason ownership is not an issue to be determined before entry of the preliminary order is that forfeiture of the defendant's interest in property found to have a nexus to the underlying violation for which he has been convicted is

mandatory.  *Alexander v. United States*, 509 U.S. 544, 562 (1993) ("a RICO conviction subjects the violator not only to traditional, thought stringent, criminal fines and prison terms, but also mandatory forfeiture under § 1963"); *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005).   The court need not define the defendant's interest before entering the preliminary order because it is impossible as a matter of law for the defendant to retain *any* interest in property as to which the requisite nexus has been shown.  "Thus, the ancillary proceeding has become the forum for determining the extent of the *defendant's* forfeitable interest in the property."  Rule 32.2, Advisory Committee Notes, 2000 Adoption (emphasis added).  Rule 32.2 establishes the "more sensible procedure [whereby] the court, once it (or a jury) determines that property was involved in the criminal offense for which the defendant has been convicted, [orders] the forfeiture of whatever interest a defendant *may have* in the property *without having to determine exactly what that interest is. Id.* (emphasis added).[9]  For the same reasons, a defendant cannot object to the entry of a preliminary order on the ground that the property at issue does not belong to him.  *United States v. Schlesinger*, 396 F.Supp.2d 267, 273 (E.D.N.Y. 2005).

Plaintiff here has shown a strong tendency to fashion its arguments in a way that keeps all of its options open.  In *Cavazos*, for example, it refused to commit as to whether the creation of Mongols, Inc. had resulted the termination of the

[9]  The deferral of the ownership determination serves both the letter and spirit of the forfeiture scheme.  *See United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) (once forfeitability is determined, the court does not -- "and indeed may not" -- determine ownership; that issue is deferred to the ancillary proceeding); *United States v. Lazerenko*, 476 F.3d 642, 648 (9th Cir. 2007); *United States v. Yeje-Cabrera*, 430 F.3d 1, 15 (1st Cir. 2005) (primary purpose of Rule 32.2 is to preserve the resources of the court and third parties by deferring ownership issue to the ancillary proceeding, thus avoiding duplicative litigation); *United States v. Gaskin*, 2002 WL 459005, at *9 n.4 (W.D.N.Y. 2002) (ownership is a question for the court alone to determine in the ancillary proceeding), *aff'd*, 364 F.3d 438 (2d Cir. 2004).

unincorporated association, or if both were still in existence. This duplicity was exposed when, after arguing in *Cavazos* that the marks were owned by Mongols, Inc. as a result of the assignment agreement, Santillan swore under penalty of perjury in the Certificate of Dissolution that Mongols, Inc. had "never acquired any known assets," meaning presumably that the marks had remained the property of the unincorporated association. Plaintiff has already suggested in the pending criminal case that Mongols, LLC is not the unincorporated association named as a defendant in the 2013 Indictment. However, it admits in the FAC in this case that the "Club" was indicted in the 2013 Indictment, and that plaintiff is the "Club."

The fact of the matter is that whether plaintiff here is the defendant in the 2013 Indictment or not, it still seeks an advisory opinion concerning the criminal forfeitability and its purported ownership of the marks sought in the 2013 Indictment. There is literally no authority for the proposition that a Court may undertake either determination in the context of a separate civil equitable proceeding brought by the purported owner of the property sought for forfeiture. The process described in § 1963 is the exclusive means by which criminal forfeitures are determined, especially where, as here, the criminal defendant claims to be the owner of the property sought for forfeiture. *See United States v. Holy Land Foundation, etc.*, 493 F.3d 469, 476 n.10 (5th Cir. 2007) (the statutory forfeiture scheme ensures an orderly proceeding, eliminating a significant burden on the Government to have to defend against collateral civil attacks during the course of an ongoing criminal prosecution); *see also United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement),* 69 F.Supp.2d 36, 42 n.8 (D. D.C. 1999) (bar on intervention is part of "an orderly forfeiture scheme"); *United States v. Kramer*, 912 F.2d 1257, 1261 (11th Cir. 1990) (the bar, explicitly limiting forfeiture challenges to the exclusive remedy provided by the statute, prevents the government from being haled into court to adjudicate the criminal forfeiture aspects of a pending criminal prosecution in a civil case).

Not only is criminal forfeiture governed by a detailed and thorough statutory scheme, plaintiff here has already taken advantage of that scheme in *Cavazos* to prevent the forfeiture of the marks in that case.  But *Cavazos* is materially distinguishable from the 2013 Indictment because plaintiff was not a defendant in *Cavazos*, but is a defendant in the current criminal case.  As a criminal defendant, plaintiff is not required to wait until the post-conviction ancillary process to assert its defenses to the substantive charges that have been brought against it.  It can do so right now, in the criminal case in which it has already appeared.  There is no reason for this Court to entertain a separate civil equitable action to determine factual and legal matters that are directly at issue in the pending criminal case.

Nor should this Court be distracted by plaintiff's reliance on orders issued in the civil case entitled *Rivera v. Carter*, referenced throughout the FAC.  As admitted in the FAC, the plaintiff in *Rivera* was "an unindicted member" of the Mongols.  FAC at 3.  His claims arose from the government's execution of a post-indictment restraining order issued in *Cavazos* that gave the government the authority to seize items bearing the marks sought for forfeiture – seizures that were authorized from defendants and non-defendants alike.  Rivera's purported apprehension that he might have property seized from him was the jurisdictional basis for Judge Carter's conclusion that the *Rivera* case did not violate the statutory bar on intervention.  But the criminal forfeitability of the marks was never before Judge Carter, and Rivera admitted in is complaint that he claimed no ownership interest in the marks.

Indeed, plaintiff here unsuccessfully argued before Judge Wright in the *Cavazos* ancillary proceeding that Judge Carter's findings in *Rivera* constituted collateral estoppel or issue preclusion against the government with respect to the forfeitability of the marks.  Judge Wright emphatically rejected that argument.  After explaining why Mongols, Inc. was incapable of relying upon the doctrine of

offensive collateral estoppel (*see* exhibit 6 to the Welk Decl. at 4-6), Judge Wright held:

> [This] court would not be guided in its determination in the ancillary proceeding in this criminal case by the outcome of the [*Rivera*] decision.  At issue in this case is the determination of the third party's interests, if any, in marks which this court has found bear some nexus to the criminal enterprise in which those defendants were involved.  That was not the issue in *Rivera*. He did not stand convicted of any offense.  If a third party asserts an interest in the property to be forfeited, it does so by the filing of a petition and the court conducts an ancillary proceeding.  This is the exclusive means by which a third party may challenge the forfeitability of the property at issue.  *Rivera* was a motion for summary judgment.  It was not conducted under the provisions of Federal Rule of Criminal Procedure 32.2 and the results of that civil proceeding have no precedental value here.

The holdings in *Rivera* are equally inapplicable here.  Plaintiff is not just a third party claimant now – it is the sole defendant in a RICO prosecution.  It has nothing in common with the plaintiff in *Rivera*.  Moreover, the application of principles of collateral estoppel, claim preclusion or *res judicata* as between the government and plaintiff here with respect to the decision in *Rivera* were actually litigated and necessarily determined in the *Cavazos* ancillary proceeding.  Plaintiff here was not a party in *Rivera*, and Rivera was not a party in *Cavazos*.  The advisory opinion issued in *Rivera* on the merits of the *Cavazos* criminal forfeiture proceedings has no more relevance here than it did in the *Cavazos* ancillary proceedings.  It cannot exempt plaintiff from the statutory bar on intervention.

### E.    Plaintiff Has Failed to State A Claim for Which Relief May Be Granted

To survive a motion to dismiss, a complaint must allege facts that, if taken as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard is not a probability requirement; the allegations of the complaint must show, not merely allege, that the plaintiff is entitled to the relief requested.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937. 1949 (2009).  The allegations of the complaint, in other words, must nudge the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Plaintiff has alleged seven purported "counts" in the FAC, but every one of them is a defense that should be presented, if at all, in the criminal case, not as an affirmative cause of action in a separate civil case.  Further, plaintiff has failed to allege any facts that would support an affirmative claim for relief.  The FAC consists entirely of the sort of conclusory and vague contentions that have been deemed insufficient to state a claim for relief.  "Count" 1, for example, alleges that "the attempted seizure [of the marks] by the government constitutes a prior restraint on speech," but plaintiff fails to allege any facts suggesting that the government has undertaken any effort to "seize" the marks.  The 2013 Indictment gives notice that the government intends to seek the forfeiture of the marks in the event of a conviction of the defendant on the substantive charges alleged.  It does not include a request for seizure authority, and no such request has been made, either in the criminal case or otherwise.  Plaintiff's failure to allege any facts suggesting that the government has made any attempt to seize the marks is fatal to "counts" 1, 2 and 6, all of which rely upon allegations involving seizure.

"Counts" 3 and 4 are foreclosed because plaintiff has not (and cannot) allege facts sufficient to establish the applicability of the doctrines of collateral estoppel or *res judicata*, particularly in light of Judge Wright's rejection of those precise arguments in the *Cavazos* ancillary proceeding.  "Count" 5 alleges that the "government is barred by the statute of limitations," but that is a defense that must be brought in the criminal case.  It is not an affirmative cause of action in a separate civil case.  "Count" 7, alleging a violation of due process, is facially absurd.  Plaintiff is being accorded full due process in the criminal case in which it

has been arraigned.  In short, plaintiff has failed to allege a single viable legal theory or facts which can be interpreted in a manner that would provide a factual basis for a civil equitable cause of action.

## V.    CONCLUSION

For all of the reasons set out above, defendant respectfully requests that the first amended complaint be dismissed without leave to amend.

DATED:  September 9, 2013    ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


_____/S/_____
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
United States of America