BERNSTEIN LAW OFFICE, INC.
Bob Bernstein, SBN: 43230
bob@crimeonly.com
3727 W. Magnolia Blvd., # 767
Burbank, CA 91505
Telephone:  (818) 558-1717
Facsimile:  (818) 526-7672
*Attorneys for Plaintiff*
*Mongols Nation Motorcycle Club, LLC "MNMC"*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONGOLS NATION MOTORCYCLE CLUB, LLC, <br>      Plaintiff, <br><br>      v. <br><br> ERIC H. HOLDER, Attorney General of the United States, <br><br>      Defendant. | ) Case No.: 13-cv-4374-VKB-DDP <br> ) **PLAINTIFF'S OPPOSITION TO** <br> ) **DEFENDANT'S MOTION TO** <br> ) **DISMISS** <br> ) <br> ) <br> ) <br> ) Date:  October 7, 2013 <br> ) Time:  10:00 A.M. <br> ) Dept:  3 <br> ) <br> ) |

Plaintiff hereby submits its opposition to defendant's motion to dismiss the FAC with prejudice.  Plaintiff requests that the Court deny the motion or grant leave to amend the FAC.

DATED: September 23, 2013          Respectfully submitted,

                                   */s/Bob Bernstein*
                                   BOB BERNSTEIN, ESQ.
                                   BERNSTEIN LAW OFFICE, INC.
                                   *Attorney for Plaintiff MNMC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I
### LOCAL RULES

The government's motion was filed two days late as the government was required to respond to the FAC on September 7, 2013 but did not file the motion to dismiss until September 9, 2013.

The government did not comply with local rule L.R. 7-3 which requires the counsel contemplating the filing of a motion to first contact, preferably in person, opposing counsel at least seven days before the filing of the motion to discuss the substance of the motion and any potential resolution.   The motion does not contain the following required statement: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."  (LR 7-3.)

Plaintiff counsel misinterpreted the local rules and acted under the belief that Plaintiff could file the instant opposition 14 days before the hearing.

### II
### PLAINTIFF'S CLAIMS ARE SUFFICIENTLY STATED BECAUSE EQUITABLE RELIEF IS PROPER EVEN IN CRIMINAL ACTIONS WHEN THERE ARE EXTRAORDINARY FIRST AMENDMENT IMPLICATIONS

Plaintiff has alleged sufficient facts and a legal cause of action.  The government incorrectly claims that Plaintiff has not alleged that the government is attempting the seize the Marks.  (Mot. at 17.)  However, Count II specifically states that the "government is improperly attempting to seize the collective marks of the Club and its members because the RICO forfeiture statute is an *in personam* mechanism that can only be employed against individuals." (FAC at 8, see also Id. at 5, ll. 1-3; 9, ll 4-7.)  Further, the FAC specifically refers to the government's filing of the indictment, and its attempt to obtain "forfeiture of two collective marks owned by the Club

entitled the "Word Mark" and "Rider Mark." (FAC ¶ 8.) As explained herein, the government lacks jurisdiction to proceed, yet by proceeding, continuously violates the First Amendment rights of Plaintiff because the indictment alleges the Marks are worn for criminal purposes. This constitutes an extraordinary circumstance justifying the requested declaratory relief.

A Fed. R. Civ. P. 12(b)(6) motion should only be granted if, after taking all well pleaded allegations in complaint as true, and plaintiff can prove no set of facts entitling relief. (Hall v. Tyco Int'l, Ltd. (M.D.N.C. 2004) 223 F.R.D. 219, 231; HSBC Bank USA v. Dara Petroleum, Inc. (E.D. Cal. May 27, 2010) 2010 U.S. Dist. LEXIS 61633.) Here, Plaintiff has properly sought equitable relief, which is an appropriate remedy to stop a criminal proceeding that has the potential to cause irreparable harm by the depriving a protected federal right. (Dombrowski v. Pfister (1965) 380 U.S. 479, 486-487.) This is an exception to the traditional rules of standing, see United States v. Raines (1960) 362 U.S. 17, that is necessary because of the ". . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute  susceptible of sweeping and improper application." (NAACP v. Button (1963) 371 U.S. 415, at 433.) "The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." (Dombrowski v. Pfister (1965) 380 U.S. 479, 486-487; see NAACP v. Button, supra, at 432-433; cf. Baggett v. Bullitt (1964) 377 U.S. 360, at 378-379; Bush v. Orleans School Board (1961) 194 F.Supp. 182, 185.) As explained herein and alleged in the FAC, the government's unauthorized attempt to obtain forfeiture of the Marks results in an ongoing First Amendment violation of the rights of the Club and its members as a result of the

misapplication of the RICO statute, as applied to Plaintiff.   (See, U.S. v. Mongol Nation (CR-13-00106) (hereinafter "indictment").)

The indictment criminalizes the rights of expression and association of the Club and its members by alleging that the Marks are used to further the criminal activity of a RICO enterprise.  This allegation has the chilling effect against members who would otherwise wear the Marks if not for fear of prosecution.  Each and every day in which the indictment remains pending casts a shadow over the members' willingness to wear the Marks despite the fact so doing is nothing more than an expression of free speech under the First Amendment.    Thus, the FAC is not solely seeking the prevention of forfeiture, but is further necessary to protect Plaintiff's federal rights.

**III**

**DECLARATORY RELIEF IS PROPERLY SOUGHT BECAUSE THE PROPERTY IS NOT SUBJECT TO FORFEITURE UNDER 18 U.S.C. § 1963(i)**

The government argues that pursuant to Section 1963(i), "no party claiming an interest in property subject to forfeiture under this section may intervene in a trial or appeal of a criminal case involving forfeiture; or commence an action in equity" concerning the "validity" of his alleged interest in the property.  (See, 18 U.S.C. § 1963(i); Mot. at 9.))  But Plaintiff is not barred by 18 U.S.C. § 1963(i) because, as explained herein, the Marks are not "subject to forfeiture."  (Ibid; Section III, A-C.)  Moreover, the instant Complaint is not solely based on "property" and instead focuses primarily on the indictment's obvious *restraints on speech and association*.  (See, FAC; Section IV; (U.S. v. Mongol Nation (CR-13-00106); Mot. at 9-10; (See, 18 U.S.C. § 1963(i) (preventing the filing of an action related to property *subject to forfeiture* but silent as to whether a party may seek injunctive relief for a violation of the First Amendment).)

The government cites no case law interpreting Section 1963(i) as barring an action such as the FAC, which alleges that the forfeiture attempts of the government violate the First Amendment. (<u>Mot</u>. at 9-10.) This is because the novel use of the RICO statute by the government in the indictment to seize the Marks is equally unprecedented as it is unjustified. It is inappropriate in this instance to wait for the resolution of the criminal case and a Rule 32 proceeding because Plaintiff and the members of the club are entitled to wear the Marks—and thereby express their association—but the members are chilled from expressing their association by the implications of the RICO indictment alleging that the Marks are used to further a criminal enterprise. (<u>U.S. v. Mongol Nation</u> (CR-13-00106); <u>Sections</u> III-IV.)  The motion should be denied because the property is not subject to forfeiture and because this action is necessary to prevent the continuing violations Plaintiff's federal rights.

A. **The Marks are Not Proceeds of RICO Racketeering Acts and There is No Causal Link Between the Marks and the Alleged Racketeering Acts**

In order to establish a violation of Section 1962(a), the government must prove the following elements beyond a reasonable doubt:

1. Existence of an enterprise;
2. The enterprise engaged in, or its activities affected, interstate or foreign commerce;
3. The defendant derived income, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal;
4. The defendant used or invested, directly or indirectly, any part of that income, or the proceeds of that income, in the acquisition of an interest in, or the establishment or operation of, the enterprise."

1  (Abraham v. Singh (5th Cir. 2007) 480 F.3d 351, 3 156 56-57; St. Paul
2  Mercury Ins. Co. v. Williamson (5th Cir. 2000) 224 F.3d 425, 441; United
3  States v. Vogt (4th Cir. 1990) 910 F.2d 1184, 1194, *cert. denied*, 498 U.S.
4  1083 (1991).)

5  However, the government cannot meet the "but for" test to establish
6  that the Marks are proceeds derived from criminal activity: A plain reading
7  of Section 1963(a) indicates that the interest to be forfeited must have been
8  acquired or maintained as a result of the racketeering violation.   (Ibid.)
9  Some courts have held that there must be a "but for" relationship between
10 the offense and the acquisition or maintenance of the interest. (See, e.g.,
11 United States v. Cianci (D.R.I. 2002) 218 F. Supp. 2d 232, 235 (district court
12 imposes forfeiture upon finding that defendants would not have obtained
13 $250,000 "but for" defendants' participation in RICO conspiracy); United
14 States v. Angiulo (1st Cir. 1990) 897 F.2d 1169, 1213 (reversing forfeiture of
15 property obtained before the defendant committed his second racketeering
16 act); United States v. Ofchinick (3d Cir. 1989) 883 F.2d 1172, 1183-1184
17 (holding that the Government failed its burden of proving that the
18 defendant's "racketeering activities were a cause in fact of his acquisition of
19 or maintenance of an ownership interest in the [forfeited] stock"); United
20 States v. Horak (7th Cir. 1997) 833 F.2d 1235, 1242 (remanded to determine
21 whether defendant's salaries and bonuses subject to forfeiture were obtained
22 solely from unlawfully obtained contract or were in part obtained through
23 lawful activities).)   The indictment does not contain allegations sufficient to
24 meet the but for test.  (Ibid.)

25 Here, the government cannot realistically argue that the Marks were
26 somehow obtained by virtue of the alleged racketeering acts.  The indictment
27 actually alleges that the alleged members wore the patches at the time of
28 each and every alleged criminal act.   (Indictment.) This shows that the

government is assuming the Mongols were in possession of the Marks *before* any criminal activity occurred.    (Ibid.)   It follows that the government cannot established—and has not made sufficient allegations—to show that the Marks are forfeitable.  (United States v. Kramer (11th Cir. 1996) 73 F.3d 1067, 1076, *cert. denied*, 519 U.S. 1011 (property subject to forfeiture under Section 1963(a)(3) is limited to property that a defendant obtains directly or indirectly as a result of racketeering activity prior in time to the racketeering acts); see, also, e.g., United States v. Thevis (N.D. Ga. 1979) 474 F. Supp. 134, 142 ("Interest" subject to forfeiture under 18 U.S.C. § 1963(a) is limited to the interest in the enterprise and does not extend to fruits or profits generated from the enterprise.)  The government clearly has failed to establish that the "interest" was obtained "prior in time" and it follows that the interest was not obtained either directly or indirectly as a result of the alleged racketeering acts.  (Kramer, 73 F.3d at 1076; Angiulo, 897 F.2d at 1213; Thevis, 474 F. Supp. at 142.)

Moreover, as a matter of logic, the Marks are not an "interest" or property subject to criminal forfeiture because they are simply patches worn on the back of the jackets the Club members wear when riding their motorcycles. (See, Indictment at 5-6.)  Over time, they have become the intellectual property of the Club as collective marks, but a trademark "is not property in the ordinary sense." (Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc. (2d Cir. 1985) 754 F.2d 91, 97.) Instead, a trademark is an intangible "limited property right in a particular word, phrase or symbol," separate from any tangible items bearing the mark. (New Kids on the Block v. News America Pub., Inc. (9th Cir. 1992) 971 F.2d 302, 306; see also, 15 U.S.C. § 1127.)    No criminal activity would realistically be required for the members to wear the patches.  The patches have become recognized and associated with the Mongols because the members have been wearing the

patches for decades.   The Marks are nothing more than collective marks used to demonstrate membership.   (<u>International Order of Job's Daughters v. Lindeburg and Co</u>. (9th Cir. 1980) 633 F.2d 912, 914; <u>see</u>, Section II, C, *infra*.)

The indictment consequently also falls short of assertions that would meet the "causal link test": In <u>United States v. DeFries</u>, the court ruled that the "but for" test requires only an adequate "causal link between the property forfeited and the RICO violation" that should be determined on the facts of each case. (<u>DeFries</u>, (D.C. Cir. 1997) 129 F.3d 1293 1312-13.)   But there is no conceivable argument supporting a causal link between the crimes alleged in the indictment and the ownership of the collective marks. (<u>See</u>, <u>generally</u>, <u>Indictment</u>.)   The indictment alleges murder, drug distribution, and a variety of felonies.   (<u>Ibid</u>.)   None of the crimes alleged somehow gave the Club members the right to wear a patch on their back.   In actuality, the right to wear the Marks were bestowed upon the members under the *First Amendment*, which permits an individual to express himself and demonstrate his association with others.   Unfortunately, the indictment seeks to crush the members' First Amendment rights through the governments' unfounded forfeiture vendetta that is entirely unjustified under RICO.   (<u>See</u>, Section II, B, *infra*; Section III, *infra*.)   The government has no jurisdiction to under the indictment.   (<u>Kramer,</u> 73 F.3d at 1076; <u>Angiulo</u>, 897 F.2d at 1213; <u>Thevis</u>, 474 F. Supp. at 142.)

**B.   RICO Forfeiture is an *In Personam* Procedure That Does Not Apply to The Club as an Entity, Which Is an Improperly Named Defendant In The Indictment**

Forfeiture is an *in personam* remedy targeted primarily at the defendant who committed the criminal offense. (<u>United States v. Riley</u> (8th Cir. 1996) 78 F.3d 367, 370-371; <u>United States v. Lester</u> (9th Cir. 1996) 85

F.3d 1409 at 1414 n.8.)   Here, the government attempts to create a non-existent nexus between the actions of previously convicted criminal defendants, and an amorphous "unincorporated association" which the government has now determined is represented by David Santillan, who is president of Mongols Nation Motorcycle Club, LLC.

> "Though the indictment alleged that the Named Companies are an enterprise through which defendants conducted their racketeering activities, an allegation that an enterprise was used to commit RICO violations is not enough to make the enterprise forfeitable, only defendants' interests in that enterprise. RICO's criminal forfeiture is an *in personam* remedy to punish the RICO defendants. (*See* United States v. Conner (11th Cir. 1985) 752 F.2d 566, 576.) It does not permit the government to seize control of  an enterprise that defendants used to accomplish their racketeering."
> (United States v. Riley (8th Cir. 1996) 78 F.3d 367, 370-371.)

The government seeks to evade the *in personam* nature of RICO forfeiture by naming "Mongols Nation, an unincorporated association" as a Defendant. But,

> "'The statute says that it is the proceeds received by the defendants, not by their enterprise, that are forfeitable.' (United States v. Masters (7th Cir. 1991) 924 F.2d 1362, 1370, cert. denied, 500 U.S. 919, 114 L. Ed. 2d 105; see United States v. Olson, (8th Cir. 1994) 22 F.3d 783, 785, cert. denied, 115 S. Ct. 320 (bank officers' salaries and bonuses are subject to forfeiture, not the bank depositors' funds).) Even if the government had included the Named Companies as RICO defendants, its assertion that $ 28 million is subject to forfeiture would be absurd. A corporate defendant's racketeering "proceeds" are subject to forfeiture. . .  (See Masters, 924 F.2d at 1370; United States v. Lizza Indus., Inc. (2d Cir. 1985) 775 F.2d 492, 497-98, cert. denied, 475 U.S. 1082.)"
> (United States v. Riley (8th Cir. 1996) 78 F.3d 367, 371.)

The government's theory is flawed.  Criminal forfeiture operates *in personam* against a defendant; it is part of his punishment following conviction.  (See, United States v. Lazarenko (9th Cir. 2007) 476 F.3d 642, 647.)  This distinguishes the forfeiture judgment in a criminal case from the *in rem* judgment in a civil forfeiture case.  (United States v. Vampire Nation (3d Cir. 2006) 451 F.3d 189, 202.) Here, in the related indictment, the government seeks to re-open the implications of prior convictions of individuals *alleged* to be operating under the scope of the Mongols Nation and somehow obtain forfeiture of the collective trademarks worn by thousands of motorcycle riders across the country.  (See, generally, Indictment.)   RICO does not provide for the government's long-reaching efforts.  (Ibid; Riley, 78 F.3d at 370-371; United States v. Saccoccia (1st Cir. 2003) 354 F.3d 9, 14-15 ("At first blush, the present holding may appear to diverge from the stated legislative intent to accord the government extremely aggressive forfeiture remedies so as to preclude criminals from realizing the monetary benefits of their crimes . . . On the Other hand, the very potency of the forfeiture power demands that it be reasonably contained within ascertainable limits.).)   Declaratory relief must be granted because the indictment lacks of jurisdiction under RICO.

The government is blurring the boundaries afforded to them by the RICO act.  The indictment alleges defendant violated section 1962(c), but that section "prohibits any *person* employed by or associated with any *enterprise* from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity." (Abraham v. Singh (5th Cir. 2007) 480 F.3d 351, 357  (emphasis in original) (internal quotations and citations omitted); see also, Whelan v. Winchester (5th Cir. 2003) 319 F.3d 225, 229.) "To state a claim under subsection (c), a plaintiff must demonstrate, *inter alia*, that the RICO person is distinct from the RICO

enterprise." (<u>Abraham</u>, <u>supra</u>, 480 F.3d at 357.)   A party cannot simultaneously be enterprise under RICO and RICO defendant. (<u>Lopez v Dean Witter Reynolds, Inc</u>. (1984, ND Cal) 591 F Supp. 581.)

"A pattern of racketeering activity", suggests the principle that to establish liability under § 1962(c), existence of two distinct entities—(1) a "person," and (2) an "enterprise" that is not simply same "person" referred to by different name—must be alleged and proven, as in ordinary English one speaks of employing, being employed by, or associating with others, not oneself. (<u>Cedric Kushner Promotions, Ltd. v King</u> (2001) 533 US 158; 2001 CDOS 4747; 2001 *Daily Journal DAR* 5855; *RICO Bus Disp Guide* (CCH) P 10085; 2001 *Colo J C A R* 2949, 14 *FLW Fed S* 334.)

An "enterprise" may not be held liable for damages under 18 USCS § 1962(c) either directly or under principles of *respondeat superior*, since both direct liability and vicarious liability are directly at odds with Congressional intent behind § 1962(c) to separate enterprise from criminal "person". (<u>Schofield v First Commodity Corp</u>. (1st Cir. 1986) 793 F2d 28.) Moreover, courts have held that the distinctness requirement is not satisfied where a corporation is the charged defendant and the enterprise "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant," because if such pleading were allowed, the prohibition on naming the same corporation as both the defendant and the RICO enterprise could be routinely evaded by listing corporate officers and employees as part of the enterprise, without affecting the gravamen of the complaint. (<u>See</u>, <u>Riverwoods Chappaqua v. Marine Midland Bank</u> (2nd Cir. 1994) 30 F.3d 339, 344.)

While some courts have held that "person" and "enterprise" need not be separate entities under sections 1962(a), and (b), (<u>Pennsylvania v Derry Constr. Co</u>. (1985, WD Pa) 617 F Supp. 940), there is no question that in an

action brought under section 1962(c), "person" and "enterprise" must be distinct entities. (<u>United States v Standard Drywall Corp</u>. (1985, ED NY) 617 F Supp. 1283; <u>Temple University v Salla Bros., Inc</u>. (1986, ED Pa) 656 F Supp. 97; <u>see</u>, <u>Richter v Sudman</u> (1986, SD NY) 634 F Supp. 234 (RICO complaint naming defendant both "person" and "enterprise" under section 1962(c) was dismissed as corporate entity may not be simultaneously "enterprise" and "person" conducting affairs of enterprise through pattern of racketeering activity.); <u>see also</u>, <u>Waddell & Reed Fin., Inc. v Torchmark Corp</u>. (2003, DC Kan) 243 F. Supp. 2d 1232 (Life insurance company could not be defendant on Racketeering and Corrupt Organizations Act, 18 USCS §§ 1961 *et seq.*, claim where plaintiffs asserted that life insurance company was one of alleged "enterprises" because "person" and "enterprise" engaged in racketeering activities must be different entities.).)

Here, in the indictment, the government's theory of a "pattern of racketeering activity" committed by defendant is nothing more than a re-hashing of prior convictions of individuals, only in the instant indictment, the government has removed the names of the actual actors and replaced them with defendant "MONGOL NATION." This is nothing but an attempt to evade the *in personam* nature of RICO forfeiture. (See, <u>Indictment</u> at 20-23.) Likewise, the conspiracy charge is alleged to have been accomplished by MONGOL NATION "acting by and through full patched members of the Mongols Gang." (<u>Indictment</u> at 25.) The indictment explicitly names individuals, listing "leaders, officers, full patched members, and prospective members" whom the government claims were involved in murder, distribution of narcotics, collection of tax payments for narcotics-trafficking, and possession of weapons and devices used to enforce the authority of the Mongols. (<u>Id</u>. at 26.) The indictment goes on to include a large list of felonies committed ***by individuals*** from 2002 to 2012. (<u>Id</u>. at 28-39.) The

indictment claims that these actions were committed while the individuals wore the Marks the government seeks to forfeit.  But RICO forfeiture is limited to property owned by those same individuals; as explained *infra*, collective marks are not owned by the individuals who wear them to express association in a group.  (Riley, 78 F.3d at 370; Vampire Nation,451 F.3d at 202;  United States v. Nava (9th Cir. 2005) 404 F.3d 1119, 1136-37.) Declaratory relief should be granted because the forfeiture theory is factually and legally impossible under RICO.

The Club's property cannot be forfeited even if individuals used it to act illegally. (See Nava, 404 F.3d at1136-37, *Order* at 13:8-11 ("there is no support for the notion that a defendant's control of property belonging to a RICO enterprise is sufficient to establish a forfeitable ownership interest in the property"). The Ninth Circuit has made clear that "only the defendant's interest in the enterprise is forfeitable, not the enterprise itself," except in the unique situation, not presented here, "where the culpable person owns the entire enterprise." (United States v. Busher (9th Cir. 1987)  817 F.2d 1409, 1413 n.7 (emphasis in original); see also, United States v. Regan (2d Cir. 1988) 858 F.2d 115, 119 n.2  ("Where a RICO defendant is a partner in a partnership, only his interest in that partnership, not the entire partnership, is forfeitable."). Therefore, an "allegation that an enterprise was used to commit RICO violations is not enough to make the enterprise forfeitable." (Riley, 78 F.3d at 370 (emphasis in original).   The forfeiture theory forwarded on the Court by the government is irreparably flawed.

## C.  The Marks Are Collective Membership Marks That Cannot Be Forfeited Because The Marks Are Not Owned By The Individuals Who Allegedly Committed Racketeering Acts

The government finds itself in a Catch-22.  It can only obtain forfeiture on an *in personam* basis against individuals who actually commit

racketeering acts. (Section II, A, *supra*.) Yet it cannot obtain forfeiture of the Marks because the Club does not commit racketeering acts.  As alleged in the indictment, individuals committed the acts, not the Entity itself.   In an ends oriented attempt to seize the Marks, the government ignores this reality and thereby attempts to exceed the jurisdiction granted to it by Congress under RICO.  Declaratory relief must be granted because the *only* objective of the indictment is forfeiture of the Marks but the government lacks jurisdiction for this objective.

Even if the government can prove the allegations in the indictment, it does not lead to the conclusion that the government may seize ownership of the collective marks.   It would only lead to the conclusion that any *individual* defendant's (although there is none) right to the Mark would be forfeitable.  But the problem with this theory is that collective marks follow the *group*.   Thus, an individual's loss of the right to "ownership" of a collective mark would not deprive other members of the group from wearing the Marks.  Individuals would always be permitted to wear the Mark on their jackets as they currently do to show affiliation with the Mongols.  The government's theory fails when the basic tenants of collective marks are considered.

The government cannot obtain forfeiture of the Marks because collective marks can only be owned by the organization to whom the Marks symbolize membership. (<u>F.R. Lepage Bakery, Inc. v. Roush Bakery Products Co., Inc.</u> (Fed. Cir. 1988) 851 F.2d 351, 353, *modified on unrelated issue*, (Fed. Cir. 1988) 863 F.2d 43; <u>Sebastian Int'l, Inc. v. Longs Drug Stores Corp.</u> (9th Cir. 1995) (Ferguson, J., concurring) 53 F.3d 1073, 1077; <u>Huber Baking Co. v. Stroehmann Bros. Co.</u> (2d Cir. 1958) 252 F.2d 945, 952.)  By their very nature, collective membership marks are owned by organizations, not individuals. "A collective mark denotes membership in an organization,"

(<u>International Order of Job's Daughters v. Lindeburg and Co.</u> (9th Cir. 1980) 633 F.2d 912, 914 n.2, and informs "relevant persons of the member's association with the organization."   (<u>Vistein v. American Registry of Radiologic Technologists</u> (N.D. Ohio 2007) 509 F. Supp. 2d 666, 703, *aff'd in relevant part*, 342 Fed. Appx. 113 (6th Cir. 2009).   The government cannot hold the Club—nor its thousands of law abiding members—responsible for the actions of those mentioned in the indictment and it cannot eliminate the existence of the Club or the members' rights to bear the Marks.

Accordingly, as a matter of law, as individuals cannot own a collective mark, the government is barred because it can only obtain forfeiture on an *in personam* basis against the individuals who commit the racketeering acts but here the defendant is the Mongol Nation as an entity. (Section II, A, *supra*; <u>see</u>, <u>e.g.</u>, 21 U.S.C. § 853(p) (only the "property of the defendant" may be forfeited as "substitute property"); <u>United States v. Jimerson</u> (11th Cir. 1993) 5 F.3d 1453, 1454 (innocent spouse's "interest in the property is unaffected by her husband's forfeiture to the Government" even though property was used to "facilitate" criminal activity); <u>see also</u>, <u>United States v. Certain Real Property at 2525 Leroy Lane</u> (6th Cir. 1989) 910 F.2d 343, 349 ("forfeiture statutes are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise"); <u>United States v. Tanner</u> (West Virg. 1994) 853 F. Supp. 190, 197 (the purpose of section 853 "is not to divest innocent persons of their legitimate interests in property"); <u>United States v. Lester</u> (9th Cir. 1996) 85 F.3d 1409, 1415.)  But the Marks are not owned the individuals and there is no alternative theory available to justify forfeiture.

As the <u>Lepage</u> court explained this principle:

the users of a *collective mark* must be members of an "organization" …. An individual person or corporation … is not,

in that capacity, the owner of a collective mark and cannot register it as a collective mark…. A collective mark is said to be "a trademark or service mark used by the members of a cooperative, an association or other group or organization." It follows logically that only such an organization as is indicated by the statutory definition can become the owner of a collective mark ….

851 F.2d at 353-54 (emphasis in original).

Only the Club, not any individual member, has ever owned the Marks. And because no indicted individual defendant ever owned the Marks, and because forfeiture is an *in personam* device, the Marks are not subject to forfeiture.

As collective membership marks, the Marks are a type of trademark. (15 U.S.C. § 1127.)  They are subject to the same rules and limitations as any mark. (15 U.S.C. § 1054; Sebastian, supra, 53 F.3d at 1075; PGA v. Bankers Life & Casualty. Co. (5th Cir. 1975) 514 F.2d 665, 668; Carefirst of Maryland, Inc. v. First Care, P.C. (E.D. Va. 2004) 350 F. Supp. 2d 714, 724 n.9, *aff'd*, 434 F.3d 263 (4th Cir. 2006).)  A trademark "is not a property in the ordinary sense." (Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc. (2d Cir. 1985) 754 F.2d 91, 97.) Instead, a trademark is an intangible "limited property right in a particular word, phrase or symbol," separate from any tangible items bearing the mark. (New Kids on the Block v. News America Pub., Inc. (9th Cir. 1992) 971 F.2d 302, 306; see also, 15 U.S.C. § 1127.)  Most importantly, a trademark "does not confer a right to prohibit the use of the word or words" contained in the mark under all circumstances. (Prestonettes, Inc. v. Coty (1924) 264 U.S. 359, 368, 44 S. Ct. 350, 68 L. Ed. 731.)

The government is logically, legally and factually barred from obtaining forfeiture.  Because the government and the Mongols are two

different entities and collective marks cannot be owned by an organization to which the collective marks do not indicate membership, forfeiture of the marks to the government is impossible. The government's actions consequently result in an impermissible chilling of speech and association under the First Amendment and an attempt at an illegal seizure.

## IV
## DECLARATORY RELIEF IS JUSTIFIED BECAUSE THE GOVERNMENT'S INDICTMENT OPERATES AS A PRIOR RESTRAINT ON SPEECH IN VIOLATION OF THE FIRST AMENDMENT

It is apparent that the government's seeks forfeiture of the Marks to prevent anyone from wearing them and thereby demonstrating affiliation with the Mongols.  (See, generally, Indictment.)  This is simply a content based regulation of speech with insufficient justification to avoid violating the First Amendment.  An injunction is necessary to prevent the chilling of speech that results from the government's impending forfeiture attempts. (Dombrowski, supra, 380 U.S. at 486-487.)

The First Amendment does not permit the government to impose special prohibitions on those speakers who express views on disfavored subjects.  (R. A. V. v. St. Paul (1992) 505 U.S. 377, 391  (holding law that proscribes donning of swastika "facially unconstitutional.").)  The point of the First Amendment is that majority preferences must be expressed in some fashion other than silencing speech on the basis of its content. (Id. at 392.)  Just as the government has no right to prevent individuals from swastikas, it has no right to prevent individuals to from wearing the Marks. (Ibid.)  The government has disguised its attempt to suppress the Mongols' freedom of speech and association in the form of forfeiture but the effect is undeniably the same as if it was a statutory regulation of speech.  (See, Indictment (seeking forfeiture of collective marks).)  And it is equally

impermissible.  (<u>St. Paul</u>, 505 U.S. at 391-392 ; (<u>Church of American Knights of the Ku Klux Klan v. Kerik</u> (2d Cir. 2004) 356 F.3d 197, 206.)

The First Amendment protects the display of insignia by Club members, because such display "communicate[s] the fact of their association with this particular kind of organization." (<u>Sammartano v. First Judicial Dist. Court</u> (9th Cir. 2002) 303 F.3d 959, 971-72.)   It is the essence of protected speech to proclaim one's association or affinity with an organization by wearing or displaying distinctive clothing, words, or images. (<u>Kerik</u>, 356 F.3d at 206 (2d Cir. 2004); <u>Sons of Confederate Veterans, Inc. ex rel. Griffin v. Commission of Virginia Dept. of Motor Vehicles</u> (4th Cir. 2002) 288 F.3d 610, 620.)   Moreover, the display of an image necessarily constitutes protected speech. Such images, whether contained in "paintings, photographs, prints [or] sculptures … always communicate some idea or concept to those who view [them], and as such are entitled to full First Amendment protection." (<u>Bery v. City of New York</u> (2d Cir. 1996) 97 F.3d 689, 696.)

The seizure of expressive materials is a prior restraint on speech. (<u>Fort Wayne Books, Inc. v. Indiana</u> (1989) 489 U.S. 46, 63-64.) The Government's ability to seize property bearing the trademark acts as a prior restraint. Apart from narrow exceptions not present here, the First Amendment prohibits prior restraints on speech. (<u>Johansen for and on Behalf of NLRB v. San Diego County Dist. Council of Carpenters</u>) 745 F.2d 1289, 1294 (9th Cir. 1984) (citing cases).  "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." (<u>Rosenberger v. Rector and Visitors of University of Virginia</u> (1995) 515 U.S. 819, 828.)   In particular, a ban on symbols or images associated with motorcycle clubs is unconstitutional, because "motorcycle enthusiasts are targeted with a regulation that applies to them solely because they choose to

communicate the fact of their association with this particular kind of organization." (<u>Sammartano</u>, 303 F.3d at 971-72.)

The First Amendment does not permit restrictions on an individual's speech "merely because an individual belong[s] to a group, some members of which committed acts of violence." (<u>NAACP v. Claiborne Hardware Co</u>. (1982) 458 U.S. 886, 920; *cf.* <u>Healy v. James</u> (1972) 408 U.S. 169, 186 (First Amendment rights cannot be infringed based on "guilt by association"). As a result, "liability could not be imposed consistent with the First Amendment solely on account of an individual's association with others who have committed acts of violence; he must have incited or authorized them himself." (<u>Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists</u> (9th Cir. 2002) 290 F.3d 1058, 1073.) The government may not restrict protected speech of a person not shown to have committed any unlawful conduct.

Nor is it any answer to suggest that a person displaying the Marks necessarily endorses or advocates illegal activity, even assuming that to be the case. "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." (<u>Ashcroft v. Free Speech Coalition</u> (2002) 535 U.S. 234, 253.) A "person's speech ... is not removed from the ambit of First Amendment protection simply because it advocates an unlawful act." (<u>White v. Lee</u> (9th Cir. 2000) 227 F.3d 1214, 1227.) The First Amendment does not permit government "to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (<u>Brandenburg v. Ohio</u> (1969) 395 U.S. 444, 447.) Therefore, speech that "merely endorse[s] or encourage[s] the violent actions of others" is protected by the First Amendment. (<u>Planned Parenthood</u>, 290 F.3d at 1072.) This principle does not apply "only to political discourse," and "all

expression, advocacy or not," must "meet the Brandenburg test" before it can be regulated. (James v. Meow Media, Inc. (6th Cir. 2002) 300 F.3d 683, 699.)

There is no allegation by the government that the existence of the Marks and their ownership by the Club is likely to incite or produce imminent lawless action. Instead, the government is attempting to seize the Marks as a form of *punishment* for alleged RICO violations. But such punishment is prohibited by the First Amendment because it is a prior restraint on speech as applied to the Club as an entity and its' members as individuals. (Brandenburg, 395 U.S. at 447; White, 227 F.3d at 1227; Fort Wayne Books, 489 U.S. at 63-64; Sammartano, 303 F.3d at 971-72; St. Paul, 505 U.S. at 391-392.) The government's indictment therefore improperly infringes upon Plaintiff's First Amendment rights and because it alleges that the Marks are worn to further the purposes of a RICO enterprise, as long as the indictment is outstanding it creates a chilling effect against members of the Club who would otherwise feel free to exercise their federal rights and express their association with the Club by wearing the Marks.

V

### THE GOVERNMENT'S FORFEITURE REQUEST VIOLATES THE FIFTH AMENDMENT BY DEPRIVING PLAINTIFF OF PROPERTY WITHOUT DUE PROCESS OF LAW

The government seeks to seize the Club's property for the actions of individuals as described in the indictment. (Indictment at 28-35.) It follows that the government is justifying the seizure based on convictions of which Plaintiff was not associated. (Ibid.) Thus, the government is attempting to punish Plaintiff for prior convictions against non-parties that defendant had *no opportunity to defend* against. (Ibid.) This violates the Fifth Amendment's protection against deprivation of property without due process of law. (U.S. CONST. 5TH AMEND.) The purpose of the Fifth Amendment is to limit power of legislature, as well as of prosecuting officers of the United

States. (<u>Ex parte Wilson</u> (1885) 114 US 417.)   The Fifth Amendment due process clause extends protection to any significant property interest, to property rights less substantial than full legal title, whether they come from private contract or state law; even mere arguable right of possession constitutes property. (<u>Federal Deposit Ins. Corp. v Morrison</u> (11th Cir. 1984) 747 F2d 610.)   The government is attempting to seize the Marks—property owned by defendant—under RICO but RICO does grant sufficient jurisdiction. (Sections II-III, *supra*.)   Consequently, the government is violating Plaintiff due process rights by punishing Plaintiff for already litigated proceedings to which Plaintiff was not a party.

## VI
## CONCLUSION

Plaintiff was not a defendant in the indictment when Plaintiff filed the instant action.  The filing of this action was necessary to defend Plaintiff's rights under the First Amendment, which the government has zealously attempted to silence.   The government retaliated to the defense of Plaintiff's rights by making Plaintiff a criminal defendant in the RICO indictment. This is nothing but a further attempt in the government's endless campaign to prevent Plaintiff and members of the club from *wearing a patch on their jackets*—a simple exercise of the right to speech and association.   The government must be stopped.  Plaintiff respectfully requests that the Court deny the motion, or, in the alternative, grant leave to amend the FAC.

Respectfully submitted,

Dated  September 23, 2013          */s/Bob Bernstein*
                                   Bob Bernstein, Esq.
                                   BERNSTEIN LAW OFFICE, INC.
                                   *Attorneys for Plaintiff MNMC*